## SCHULTZ v. CARRARD et al.

(Supreme Court, Appellate Division, First Department. April 7, 1905.)

1. DECEDENTS' ESTATES—CLAIMS—PRESUMPTIONS.
   Where it is shown that a decedent against whose estate a claim is presented was amply able to pay his debts, it will be presumed that he discharged his duty, and this presumption will not be overborne without clear and convincing proof on the part of the plaintiff.

2. SAME—EVIDENCE—SUFFICIENCY.
   Evidence *held* insufficient to establish against an estate a claim for board and lodging furnished to deceased.

Appeal from Judgment on Report of Referee.

Action by Philomena Schultz against Lydia Carrard, as administratrix, and Jules Chatelan, administrator, of the estate of Frederick Carrard, deceased. From a judgment for defendants, plaintiff appeals. Affirmed.

The following is the opinion of the referee:

This claim, the amount of which, as computed to April 22, 1904, is $3,679, is mainly for board and lodging alleged to have been furnished to Frederick Carrard, deceased, at various times between May, 1891, and February, 1902, both inclusive. The plaintiff, being debarred from testifying concerning any transaction between herself and the decedent, has attempted to establish her claim through the mouth of her husband as a principal witness, with various others, who were more or less acquainted with Mr. Carrard and his habits of life, in corroboration. It appears that the plaintiff has conducted a small establishment known as "Schultz's Hotel" in New York City, and that her husband is and has been her active agent in the management thereof. No books of accounts have ever been kept in the hotel, and the only memoranda of charges against Mr. Carrard appear in a small blank book from which many pages have been torn out, and the entries of which are under the name of "Pop"; and several pink hotel checks, which are alleged to have been made as and when Mr. Carrard demanded and received accommodations. Each and every one of these entries was made by Mrs. Schultz, and these, so far as appears, are the only charges ever entered up by her against any customer; and it is a noticeable circumstance that she admits writing with great difficulty, and is so averse to the use of a pen that she has never filled out a check, although she has signed many, and had not at any time made a memorandum on a stub of her checkbook to show what the nature of her withdrawal from her bank was. It is noteworthy that the only other entries in the small memorandum book in which this "Pop" account was kept were a succession of figures under the word "Wine," and a list of names written under the word "boarders," and these were of single persons such as "Mabel Goodwin" and "Frankie Gould," and Mr. Schultz testified that he did not know who these parties were, as they were not at any time occupants of his establishment. The case is entirely barren, therefore, of any documentary or written evidence from which a conclusion could be drawn substantiating the claim. It abundantly appears that Mr. Carrard was a good business man, the owner of real estate in New York City, and at all times, so far as the testimony shows, the possessor of cash assets of many thousands of dollars. He died in August, 1902, and at that time he owned two pieces of property in Bayard street, the equities in which are estimated at from $10,000 to $30,000, and he had in a safe deposit vault readily convertible securities of the value of $10,000, and about $500 cash in bank. It further appears that covering a period of several years prior to his death Mr. Carrard gave checks to Mrs. Schultz or her husband in various amounts aggregating $4,754.35. These checks were all drawn on the same bank, and were in various amounts ranging up to $500, and sometimes they were drawn at close intervals, showing that the depositor had large sums of money at his command. Thus, in January, 1898, on the 6th, 10th, 25th

and 28th, Mr. Carrard drew four checks in amounts of $200, $270, $425, and $300, and each of them was indorsed by Mr. Schultz and paid by the bank on the date of the depositor's order.   It being shown that the decedent was amply able to pay his debts, the law presumes that he discharged his duty, and this presumption will not be overborne in a case like this without clear and convincing proof on the part of the claimant.   Nor will the presumption that moneys paid to the proprietor of the house or her husband by the decedent were in discharge of his obligations be overcome by the statement of either husband or wife that the proceeds of checks which passed through their hands went to Mr. Carrard, especially in view of the fact that the bank upon which the checks were drawn was only one block away from the Schultz Hotel, and there is no apparent reason why the drawer should not have gone in person to his place of deposit had he wanted the funds himself.   Moreover, in this case, while Mr. Schultz swears that he never had any business connection whatever with Mr. Carrard, and does not disclose the nature of any outside business he was engaged in at any time during this accumulation of items against the decedent, he nevertheless pretends that he often advanced sums of money ranging to $500 to Mr. Carrard for mere accommodation, without any profit to himself, and he boasted of the fact in his testimony that he was in the habit of lending other persons as much as $1,000 on their mere parol, because, as he stated it, he was a reckless man.   It appears that Mrs. Schultz gave her checks to Mr. Carrard at various times in amounts aggregating $883.33, but, as this amount is exceeded by checks given to her or her husband, who was her agent, by $3,671.02, without making any allowance for interest, and there is no credible testimony in the case explaining the difference, it is clear that the claim is not established, even if it be conceded, as it is not, that the items in the alleged account, as filed, are all correct.   There was some evidence offered by the claimant to show that Mr. Carrard was from time to time embarrassed for ready money, and the attorney pressing the claim offered himself as a witness to prove this fact.   While for twenty-five years he was a legal adviser of Mr. Carrard, he was also his intimate personal friend.   His testimony was excluded, but its offer, under the circumstances, tended strongly to show the inherent weakness of the case on that point.   The burden of proof which the law imposes on a party presenting a claim against a decedent's estate has not in this instance been sustained, and there is no satisfactory evidence before me that Mr. Carrard was at the time of his death indebted to Mrs. Schultz in any amount.   I therefore conclude that the claim should be disallowed, with costs and disbursements to the defendants.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

H. M. Gescheidt, for appellant.

Frank Moss and Isidor Wels, for respondent.

PER CURIAM.   Judgment affirmed, with costs.

---

MULHERN v. CARRARD.

(Supreme Court, Appellate Division, First Department. April 7, 1905.)

1. ADMINISTRATORS—CLAIMS—EVIDENCE—SUFFICIENCY.
    The unsupported testimony of a claimant is insufficient to establish against an estate a claim for personal services rendered to the decedent during his lifetime.
    [Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 903½.]

2. SAME—EVIDENCE—SUFFICIENCY.
    Evidence held insufficient to establish against an estate a claim for personal services consisting of taking care of premises and nursing and attending the decedent during his lifetime.